UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　　　　　Plaintiff,<br><br>　　　　v.<br><br>JULIET PAYSEUR and 20-22 MCGREGOR AVENUE, LLC,<br><br>　　　　　　　　　Defendants. | Case No. 2:25-cv-00548 (BRM) (AME)<br><br>**OPINION** |

**MARTINOTTI, DISTRICT JUDGE**

　　Before the Court is *pro se* Plaintiff-Intervenor Brittany Doyle's ("Doyle") Motion to Strike ("Motion") the first, second, fifth, eighth, thirteenth, and fourteenth defenses (ECF No. 27) that Defendants Juliet Payseur ("Payseur") and 20-22 McGregor Avenue, LLC's ("McGregor Ave. LLC") (together, "Defendants") assert in their Answer to the Complaint-in-Intervention. (ECF No. 25). Defendants filed an Opposition to Plaintiff's Motion (ECF No. 29) on September 22, 2025, and Doyle filed a Reply (ECF No. 30). Having reviewed and considered the submissions filed in connection with the Motion and having declined to hold oral argument pursuant to Federal Rule of Civil Procedure ("Rule") 78(b), for the reasons set forth below and for good cause having been shown, Doyle's Motion to Strike (ECF No. 27) is **GRANTED IN PART** and **DENIED IN PART**.

**I.　BACKGROUND**

　　**A. Factual History**

　　This action arises under the Fair Housing Act ("FHA"). It was initiated as a civil enforcement action by the United States of America ("United States"), pursuant to 28 U.S.C. § 3612(o), based on allegations that Defendants "discriminated against Doyle, a mother who lived in subsidized housing with her children, based on race by demanding a significant rent increase

1

and by requiring burdensome lease terms for Doyle, a Black woman, while treating a white tenant more favorably in both respects" and, further, that Defendants retaliated against Doyle after she filed a complaint with the U.S. Department of Housing and Urban Development for violation of her rights under the FHA. (Compl. (ECF No. 1) ¶ 2.)

### B. Procedural History

The United States reached a negotiated resolution of its claims for declaratory and injunctive relief, but that settlement expressly did not resolve any claims Doyle may elect to pursue against Defendants pursuant to the FHA, should she exercise her right to intervene in this action under 42 U.S.C. § 3614(e). (*See* ECF No. 22-1 ¶¶ 9, 35.) On July 15, 2025, Doyle moved to intervene (ECF No. 21), and the Hon. Andre M. Espinosa, U.S.M.J. granted her motion on August 22, 2025 (ECF No. 23). With leave of Court, Doyle filed her own Complaint-in-Intervention, seeking damages and equitable relief for the same alleged housing discrimination underlying the United States's civil enforcement action. (ECF No. 21 at 4–6; ECF No. 24.)[1] Specifically, Doyle's Complaint-in-Intervention alleges that after Doyle was offered tenancy at 20-22 McGregor Avenue with a valid Section 8 housing voucher, "Defendants imposed discriminatory lease terms on [her] and her children, including a shorter lease period and added conditions not applied to similarly situated white tenants." (ECF No. 24 ¶ 9.) She further alleges that when she questioned the unfair treatment, Defendants launched a campaign of harassment and intimidation against her, including installation of surveillance cameras pointed exclusively at her unit and depriving her unit of heating oil. (*Id.* ¶ 10.) Doyle alleges Defendants' discriminatory and retaliatory acts caused her to lose her housing voucher, incur costs to live at a hotel, miss critical medical appointments, and

---

[1] Judge Espinosa ordered the Clerk's Office to "file, as a separate docket entry, [Doyle's] proposed Complaint-in-Intervention." (ECF No. 23; *see* ECF No. 24.)

suffer emotional trauma and anxiety, among other things. (*Id.* ¶¶ 11–12.) Her Complaint-in-Intervention asserts a sole claim for violation of the FHA. (*Id.* ¶ 13.)

On September 2, 2025, Doyle filed a Motion to Strike the first, second, fifth, eighth, thirteenth, and fourteenth defenses with prejudice.[2] (ECF No. 27) On September 22, 2025, Defendants filed an Opposition to Doyle's Motion. (ECF No. 29.) Doyle filed a Reply the next day. (ECF No. 30.)

## II.   LEGAL STANDARD

### A.   Rule 12(f)

A court may, upon motion or *sua sponte*, "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). "An affirmative defense is insufficient if it is not recognized as a legal defense to the cause of action." *Huertas v. U.S. Dep't of Educ.*, Civ. A. No. 08-3959, 2009 WL 2132429, at *1 (D.N.J. July 13, 2009). "The purpose of a motion to strike is to simplify the pleadings and save time and expense by excising from a plaintiff's complaint any redundant, immaterial, impertinent, or scandalous matter which will not have any possible bearing on the outcome of the litigation." *Garlanger v. Verbeke*, 223 F. Supp. 2d 596, 609 (D.N.J. 2002) (citations and internal quotations omitted). However, "[b]ecause of the drastic nature of the remedy, . . . motions to strike are usually 'viewed with disfavor' and will generally 'be denied unless the allegations have no possible relation to the

---

[2] While Doyle's Motion mentions "Defendants' Affirmative Defenses ¶¶ . . . 10–14," the portion of Doyle's Motion attacking Defendants' punitive damages defenses does not appear to substantively address Defendants' tenth, eleventh, and twelfth affirmative defenses. (ECF No. 27 at 2.) Additionally, Doyle mislabels Defendants' unclean hands defense as the third affirmative defense when it is actually Defendants' eighth affirmative defense. (*Compare* ECF No. 25 at 4 of 6 (listing the unclean hands defense as part of the eighth affirmative defense), *with* ECF No. 27 at 2 (misidentifying the unclean hands defense as Defendants' third affirmative defense).) As such, the Court reads Doyle's Motion to address only Defendants' first, second, fifth, eighth, thirteenth, and fourteenth defenses.

controversy and may cause prejudice to one of the parties, or if the allegations confuse the issues.'" *Id.* (citing *Tonka Corp. v. Rose Art Indus., Inc.*, 836 F. Supp. 200, 217 (D.N.J. 1993)); *see also Weske v. Samsung Elecs., Am., Inc.*, 934 F. Supp. 2d 698, 702 (D.N.J. 2013) (explaining that motions to strike are extremely disfavored). Indeed, a "court should grant a motion to strike a defense only where the 'insufficiency of the defense is clearly apparent.'" *Huertas*, 2009 WL 2132429, at *1 (quoting *United States v. Sensient Colors, Inc.*, 580 F. Supp. 2d 369, 374 (D.N.J. 2008)).

### III. DECISION

Before addressing the merits of striking specific defenses, the Court addresses Doyle's timeliness argument. Doyle claims Defendants have filed an untimely opposition and, therefore, asks the Court to disregard it. (ECF No. 30 at 1.) But Doyle's invocation of Local Civil Rule 7.1(d)(2) is misplaced. Local Civ. R. 7.1(d)(2) requires "papers in opposition to a motion . . . be filed . . . at least 14 days prior to the original motion day." Here, Doyle's Motion to Strike was set for October 6, 2025, meaning Defendants had until September 22, 2025, to file a response to that motion. (Clerk's Entry dated September 4, 2025.) Defendants timely filed their Opposition on September 22, 2025; as such, the Court will duly consider Defendants' Opposition. (ECF No. 29.)

#### A. Affirmative Defenses at Issue[3]

##### 1. Failure to State a Claim Defense

Doyle asks the Court to strike Defendants' assertion that "[a]ll or portions of Intervenor's

---

[3] Without citing any authority, Doyle argues that she will be prejudiced if the Court fails to strike Defendants' first, second, fifth, eighth, thirteenth, and fourteenth affirmative defenses. (ECF No. 27 at 3.) The Court need not specifically address Doyle's prejudice argument regarding these defenses because they are stricken on non-prejudice grounds. *See infra* Section III.A.2–5. However, the Court will address Doyle's prejudice argument with respect to Defendants' first affirmative defense, which survives Doyle's Motion. The Court finds Doyle will not be

Complaint fail to state a cause of action" because (ECF No. 25 at 3 of 6), according to Doyle, "[t]his is not a proper affirmative defense but a Rule 12(b)(6) argument that should be raised in a motion to dismiss, not in an Answer." (ECF No. 27 at 2). In opposition, Defendants disagree and point out that an omission of Rule 12(b)(6) from their responsive pleading would mean "forfeiting their right to assert this affirmative defense." (ECF No. 29 at 9 (citing Fed. R. Civ. P. 12(b)).) In reply, Doyle makes several sweeping arguments: (1) she notes a lack of a factual basis for Defendants' asserted defenses, (2) refers to the settlement between the Defendants and the United States as indicators of the defenses' insufficiency, and (3), again, claims that having to defend against the defenses at issue would prejudice her. (ECF No. 30 at 2.)

Defendants are correct—the Rules do not prevent Defendants from including a 12(b)(6) defense in their Answer. *See, e.g., Trs. of Univ. of Pennsylvania v. Mayflower Transit, Inc.*, Civ. A. No. 97-1111, 1997 WL 598001, at *1 n.1 (E.D. Pa. Sept. 16, 1997) ("Where the defense offered under Rule 12(b) previously had been included in the answer, a number of courts have treated a post-answer motion under Rule 12(b)(6) as timely."); see also *Gray v. Gilmore*, No. Civ. A. No. 2:18-cv-01414, 2019 WL 7046547, at *1 (W.D. Pa. Dec. 23, 2019) ("In civil lawsuits, defendants sometimes include a series of boilerplate affirmative defenses in their answers. One of the more common ones is: 'Plaintiff has failed to state a claim.'"). Accordingly, the Court will not strike Defendants' first affirmative defense.

---

significantly prejudiced if the Court does not strike Defendants' first affirmative defense. Wright & Miller, Fed. Prac. & Proc. § 1382 ("[T]here appears to be general judicial agreement . . . that [motions to strike] should be denied unless the challenged allegations . . . may cause some form of *significant* prejudice." (emphasis added)). Doyle fails to show how she will face significant prejudice. First, whether Doyle has stated a claim will not significantly impact the scope of discovery and therefore not "forc[e] her to conduct unfocused discovery," as she claims. (ECF No. 27 at 3.) Second, Defendants' failure to state a claim defense is not patently baseless, nor does it risk confusing a jury. *See supra* Section III.A.1.

### 2. Causation Defense

In their second affirmative defense, Defendants contend that Doyle's claims arise from actions of persons "over whom Defendants had no authority or control." (ECF No. 25 at 3 of 6.) Citing *Twombly* and *Iqbal* in support of her Motion to Strike, Doyle argues that Defendants' defense is "vague, conclusory, and provides no factual support." (ECF No. 27 at 2.) Defendants note the inapplicability of these standards to this Motion. (ECF No. 29 at 10, 7 (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009)).) Additionally, Defendants contend they have "pled an affirmative defense sounding in a superseding or intervening cause resulting in [Doyle's] alleged harm." (*Id.* at 9.) In reply, Doyle repeats her *Twombly* and *Iqbal* argument, even asserting that "[c]ourts in this District apply these standards to affirmative defenses."[4] (ECF No. 30 at 2.)

*Twombly* and *Iqbal* are not the standards courts use to assess the factual sufficiency of affirmative defenses. *Vazquez v. Triad Media Sols., Inc.*, Civ. A. No. 15-cv-07220, 2016 WL 155044, at *2 (D.N.J. Jan. 13, 2016) (quoting *Tyco Fire Products LP v. Victaulic Co.*, 777 F. Supp.

---

[4] Doyle cites *Vazquez v. Triad Media Solutions, Inc.*, Civ. A. No. 15-cv-07220, 2016 WL 155044, at *2 (D.N.J. Jan. 13, 2016), to support this assertion. (ECF No. 30 at 2.) However, using the Westlaw database identifier, electronic report number, and case number included in Doyle's citation, the Court cannot locate an opinion applying the *Twombly* and *Iqbal* standards to affirmative defenses. (*Id.*) Nor can the Court find such an opinion in this case issued on October 6, 2016—the decision date represented by Doyle. Indeed, in two opinions pertaining to *Vazquez v. Triad Media Solutions, Inc.*, the court used the following language: "[D]istrict courts within the Third Circuit have held that the heightened *Iqbal*/*Twombly* requirement that a pleading 'state a claim . . . that is plausible on its face[]" . . . does not apply to the pleading of affirmative defenses under Fed. R. Civ. P. 8(c)." Civ. A. No. 15-cv-7220, 2016 WL 155044, at *2 (D.N.J. Jan. 13, 2016) (collecting cases) (internal citations omitted); Civ. A. No. 15-cv-7220, 2016 WL 6090725, at *2 (D.N.J. Oct. 18, 2016) (same).

2d 893, 900 (E.D. Pa. 2011)). A "defendant asserting a Rule 8(c) affirmative defense 'must merely provide fair notice of the issue involved.'" *Id.*

However, the Court will strike Defendants' so-called second affirmative defense. Defendants' self-described "defense sounding in a superseding or intervening cause" (ECF No. 29 at 9) are "causation driven defenses because they either directly assert that someone else caused the [harm], or indirectly challenge causation." *Resol. Tr. Corp. v. Moskowitz*, Civ. A. No. 93-2080, 1994 WL 229812, at *26 (D.N.J. May 24, 1994), *on reconsideration*, Civ. A. No. 93-2028, 1994 WL 16190856 (D.N.J. Aug. 12, 1994). In other words, "[t]hey are merely denials of liability." *Id.* (citing *Apex Oil Co. v. DiMauro*, 713 F. Supp. 587, 604 (S.D.N.Y. 1989)). Accordingly, Doyle's motion to strike Defendants' second affirmative defense is **GRANTED**. *Moskowitz*, 1994 WL 229812, at *26 (granting plaintiff's motion to strike a mere denial of liability dressed up as an affirmative defense).

### 3. Failure to Mitigate Defense

Defendants' fifth affirmative defense is that "[Doyle] failed to mitigate her damages." Doyle asks the Court to strike this defense because it is "both conclusory and self-defeating." (ECF No. 27 at 2.) But according to Defendants, the Court should not strike this defense because "failure to mitigate is a widely recognized affirmative defense." (ECF No. 29 at 10 (citing *RHJ Med. Ctr., Inc. v. City of Dubois*, 564 Fed. App'x 660, 667 (3d Cir. 2014).)

Doyle is correct: Defendants' failure to mitigate defense "is simply a bare bones conclusory allegation." *2109971 Ontario Inc. v. Best Deals Disc. Furniture LLC*, Civ. A. No. 22-cv-3557, 2023 WL 3072756, at *6 (D.N.J. Apr. 25, 2023) (striking failure to mitigate damages defense where defendant failed to provide any factual basis for this affirmative defense). And, as articulated by Defendants, this defense "affords no notice whatsoever to [Doyle] and makes it impossible for

7

[her] to adequately respond." *Innovative Sports, Mgmt., Inc. v. Neto*, 2013 WL 5935982, at *2 (D.N.J. 2013) ("[D]efenses that are 'nothing more than bare bones conclusory allegations can be stricken.'" (quoting *F.D.I.C. v. Modular Homes, Inc.*, 859 F. Supp. 117, 120–21 (D.N.J.1994)). Accordingly, Doyle's Motion to Strike Defendants' failure to mitigate defense, Defendants' fifth defense, is **GRANTED**.

### 4. Unclean Hands Defense

As part of their eighth affirmative defense, Defendants contend that Doyle's "claims are barred, in whole or in part, by the doctrine[] of Unclean Hands." (ECF No. 25 at 4 of 6.) Doyle argues the Court should strike Defendants' unclean hands defense because it is "legally insufficient" given that "Defendants have not alleged any specific misconduct by Plaintiff that bears any connection to her claims of discrimination, harassment, or retaliation." (ECF No. 27 at 2 (citing *Highmark, Inc. v. UPMC Health Plan, Inc.*, 276 F.3d 160, 174 (3d Cir. 2001) and *In re New Valley Corp.*, 181 F.3d 517, 525 (3d Cir. 1999)).) Defendants urge the Court not to strike this defense because the Third Circuit recognizes the doctrine of unclean hands.[5] (ECF No. 29 at 10.)

---

[5] In *McKennon v. Nashville Banner Publ'g Co.*, the Supreme Court unanimously held that the equitable defense of employee misconduct could not preclude employer liability for violating the Age Discrimination in Employment Act ("ADEA"). 513 U.S. 352, 356–57, 360 (1995). The Court observed the unclean hands defense "has not been applied where Congress authorizes broad equitable relief to serve important national policies." *Id.* at 360. Several out-of-district courts have applied the rationale from the Supreme Court's *McKennon* decision to bar the unclean hands defense in FHA claims. *Mancuso v. Douglas Elliman LLC*, 808 F. Supp. 2d 606, 631–32 (S.D.N.Y. 2011) (finding the doctrine of unclean hands inapplicable to the liability issues in an FHA case); *Ramirez v. Greenpoint Mortg. Funding, Inc.*, 268 F.R.D. 627, 638 (N.D.Cal. 2010) (same); *Utah Labor Comm'n v. Paradise Town*, 660 F. Supp. 2d 1256, 1263 (D. Utah 2009) (same). However, no court in the Third Circuit appears to have considered the question of whether the rationale of *McKennon* bars the unclean hands doctrine in FHA cases. *See Branch v. Temple Univ.*, Civ. A. No. 21-3099, 2023 WL 3993016, at *2 (3d Cir. June 14, 2023) (embracing *McKennon* in a Title VII case). Here, because Defendant's unclean hands defense is stricken on alternative grounds, the Court need not decide and does not now decide whether *McKennon* bars the unclean hands defense in FHA cases.

8

Just as Defendants' failure to mitigate defense is "nothing more than bare bones conclusory allegations," *Neto*, 2013 WL 5935982, at *2 (quoting *F.D.I.C.*, 859 F. Supp. at 120–21), so too is Defendants' unclean hands defense. Defendants contend that Doyle's claims are barred by the doctrine of unclean hands but have not described with any detail what Doyle has done to trigger this defense. *JP Morgan Chase Bank, Nat'l Ass'n v. Roggio*, Civ. A. No. 19-06330, 2023 WL 1456782, at *7 (D.N.J. Jan. 31, 2023) ("Defenses that are mere conclusions should be stricken.") (striking an affirmative defense that merely stated that the complaint was barred by the Statute of Frauds). Accordingly, the Court **GRANTS** Doyle's Motion to strike the unclean hands part of the eighth defense from Defendants' Answer to the Complaint-in-Intervention.

### 5. Punitive Damages Defense

Defendants' argue that an award of punitive damages would "violate[] [both] . . . the Eighth Amendment of the United States Constitution and the Constitution of the State of New Jersey, and violate[] Defendants' right to substantive due process as provided in the Fifth and Fourteenth Amendments of the United States Constitution and the Constitution of New Jersey." (ECF No. 25 at 4 of 6.) Doyle asks the Court to strike this defense because "[c]ourts have consistently upheld the availability of punitive damages under the [FHA] and state tort law." (ECF No. 27 at 2 (citing *Herman & MacLean v. Huddleston*, 459 U.S. 375, 388 (1983)).)[6] But, according to Defendants, they "are entitled to reserve their right to assert that [potential] punitive damages may be excessive in violation of the federal and state constitutions." (ECF No. 29 at 11.)

Defendants' defense that Doyle's claim for punitive damages violates their "right to protection from 'excessive fines' as provided in . . . the United States Constitution and the

---

[6] *Herman & MacLean* is not a case about the FHA. 459 U.S. at 377. It is a case concerning Section 10(b) of the Securities Exchange Act of 1934. *Id.*

9

Constitution of the State of New Jersey[] and violates Defendants' right to substantive due process as provided in . . . the United States Constitution and the Constitution of New Jersey" (ECF No. 25 at 4 of 6) does not constitute an affirmative defense because it will not defeat Doyle's claims if proven. *Greiff v. T.I.C. Enters., L.L.C.*, Civ. A. No. 03-882, 2004 WL 115553, at *3 (D. Del. Jan. 9, 2004) (striking affirmative defense alleging that any excessive punitive damages sought by defendants are barred by the Due Process Clause of the Fourteenth Amendment and the Due Process Clause of the Georgia Constitution because they focus solely on relief, not liability). Likewise, Defendants' defense that Doyle's "claim for punitive damages violates Defendants' right to procedural due process as provided in the . . . United States Constitution and the Constitution of New Jersey" (ECF No. 25 at 4 of 6) cannot defeat Doyle's claims if proven. *Greiff*, 2004 WL 115553, at *3. Simply stated, Defendants' punitive damages "defenses" are not affirmative defenses; instead, these so-called defenses "entirely overlook liability and focus solely on potential relief." *Id.* As such, Doyle's Motion to Strike Defendants' thirteenth and fourteenth affirmative defenses is **GRANTED**.

    B. **Request for Sanctions**

In Defendants' response to Doyle's Motion, Defendants point out the numerous misrepresentations in Doyle's Motion and ask the Court to impose sanctions on Doyle for failing to comport with Rule 11. (ECF No. 29 at 11–15.) Defendants also accuse Doyle of utilizing artificial intelligence [7] in drafting her Motion, which Defendants contend caused "frivolous litigation, wasteful motion practice, [and] unnecessary cost to Defendants." (*Id.* at 15–18.) Doyle does not deny using Gen. AI. (ECF No. 30 at 2–3.) Instead, she observes the ubiquity of artificial

---

[7] Based on the parties' descriptions of the alleged artificial intelligence at issue, the Court reads Defendants' argument to mean Defendants suspect Doyle misused generative artificial intelligence ("Gen. AI").

intelligence in legal practice and affirms that she drafted and reviewed the Motion. (*Id.* at 2.) According to Doyle, "[e]very case and quotation in the [M]otion is real, verifiable, and drawn from legitimate legal sources." (*Id.*)

The use of Gen. AI in litigation, as an assistive tool and with proper review, is not a sanctionable act. *See Mattox v. Prod. Innovations Rsch., LLC*, Civ. A. No. 24-235, 2025 WL 3012828, at *2 (E.D. Okla. Oct. 22, 2025) ("[A] lawyer who wishes to use AI ethically must ensure that the legal propositions and authority generated are trustworthy."). As Doyle points out, the use of Gen. AI is "increasingly common in modern[,] [legal] practice." (ECF No. 30 at 3.) However, "courts around the country have begun confronting the phenomenon of so-called 'hallucinated' citations in court papers—that is, citations to legal authority that are either partly or wholly nonexistent." *Cojom v. Roblen, LLC*, Civ. A. No. 23-1669, 2025 WL 3205930, at *2 (D. Conn. Nov. 17, 2025) (collecting cases); *Gardner v. Combs*, Civ. A. No. 24-07729, 2025 WL 3632704, at *2 (D.N.J. Dec. 15, 2025) ("Unfortunately, the use of AI without proper oversight has become a prevalent issue for courts across the country."). Therefore, "[g]iven the ethical obligations [litigants and their] lawyers must honor, it is imperative that [those before the court] use [Gen.] AI with diligence and care." *Cojom*, 2025 WL 3205930 at *3. While courts have an obligation to conduct their own legal research and probe the factual representations made to them, litigants and their attorneys are nonetheless expected and, in fact, required to make legal arguments and factual representations in good faith. *See* Fed. R. Civ. P. 11; *see, e.g.,* NJ RPC 3.1, 3.3, 8.4(c) Indeed, litigants and their attorneys, who imprudently rely on Gen. AI tools to create legal filings, often "slow[] court proceedings and saddle[] . . . courts with the time costs and . . . burdens associated with detecting and responding to the errors." *Shelton v. Parkland Health*, Civ. A. No. 24-2190, 2025 WL 3141108, at *3 (N.D. Tex. Nov. 10, 2025).

11

That said, "sanctions are prescribed 'only in the "exceptional circumstance" where a claim or motion is patently unmeritous or frivolous.'" *Ford Motor Co. v. Summit Motor Prods., Inc.*, 930 F.2d 277, 289 (3d Cir. 1991) (citing *Doering v. Union Cnty. Bd. of Chosen Freeholders*, 857 F.2d 191, 194 (3d Cir.1988)). Because the Court strikes several of Defendants' defenses identified in Doyle's Motion, it cannot be said that her Motion is unmeritorious or frivolous. *See, e.g.*, *Zelma v. Wonder Grp. Inc.*, Civ. A. No. 25-3232, 2025 WL 2976546, at *9 (D.N.J. Oct. 22, 2025) ("Defendant's position that Plaintiff's arguments are frivolous is severely undercut by the fact that Counts II and III survive the Motion."). Accordingly, Defendants' request for sanctions is **DENIED** as it must "resolve[] all doubts in favor" of Doyle. *Id.* (citing *Ford Motor Co.*, 930 F.2d at *9).

However, for the remainder of this litigation—given numerous citations to cases that in no way represent the propositions for which they are cited—Doyle is forewarned and must read the cases she cites with greater care to ensure she is not only citing real cases but also accurately characterizing what those cases say. (*See contra, e.g.*, ECF No. 27 at 2 (citing *Herman & MacLean* for an incorrect proposition)). The Court takes the ethical obligations required of all litigants seriously—even those appearing *pro se*. *See Robinson v. Oglala Sioux Tribe*, Civ. A. No. 25-289-D, 2025 WL 2609573, at *4 (W.D. Okla. Sept. 9, 2025) ("While courts afford *pro se* litigants considerable leeway, that leeway does not relieve *pro se* litigants of their obligation under Rule 11 to confirm the validity of any cited legal authority." (quoting *Sanders v. United States*, 176 Fed. Cl. 163, 169 (2025)). In short, all litigants are dutybound "to check all . . . cases and quotations for accuracy. Anything less is to abdicate one's duty, waste legal resources, and lower the public's respect for the legal profession and judicial proceedings*." ByoPlanet Int'l, LLC v. Johansson*, 792 F. Supp. 3d 1341, 1347 (S.D. Fla. 2025).

## IV. CONCLUSION

For the reasons set forth above, and for good cause having been shown, Doyle's Motion to Strike (ECF No. 27) is **DENIED IN PART** and **GRANTED IN PART**.[8] An appropriate order follows.

Date: January 7, 2025    /s/ *Brian R. Martinotti*
   **HON. BRIAN R. MARTINOTTI**
   **UNITED STATES DISTRICT JUDGE**

---

[8] Defendants' second, fifth, eighth, thirteenth, and fourteenth defenses are **STRICKEN** without prejudice, but Defendants are cautioned not to re-assert affirmative defenses absent a legitimate basis in fact and law for doing so. *See* Fed. R. Civ. P. 15(a)(2). Defendants' eighth affirmative defense is only stricken insofar as it raises an unclean hands defense.